## CAMPBELL v. NATIONAL BROADWAY BANK.

(Circuit Court of Appeals, Second Circuit.   April 19, 1904.)

No. 162.

1. BANKS—DRAFTS ISSUED BY CASHIER TO INDIVIDUAL CREDITOR—IMPLIED AU-
   THORITY.

    A bank cannot recover the amount collected on a cashier's draft issued
by its cashier and made payable to his individual creditor, where it is
shown that the cashier had on numerous previous occasions drawn sim-
ilar drafts in payment of his own debts, and such acts had continued for
a period sufficiently long to establish a settled course of business in the
conduct of the bank which had been sanctioned by its officers, and was
known, or should have been known, to its directors.

In Error to the Circuit Court of the United States for the South-
ern District of New York.

On writ of error to the United States Circuit Court for the
Southern District of New York, to review a judgment in favor of
the defendant in error, who was defendant below, entered upon the
verdict of a jury.

George W. Wickersham, for plaintiff in error.

William J. Curtis and Francis D. Pollak, for defendant in error.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge.   This action was commenced by the plain-
tiff, as ancillary receiver, to recover $12,150 and interest, being the
amount due on three cashier's drafts, drawn by George M. Valen-
tine, cashier of the Middlesex County Bank, of Perth Amboy, N.
J., on' its New York correspondent, the National Park Bank of New
York, to the order of the defendant, the National Broadway Bank.
These drafts were given by Valentine in payment of his individual
obligations to the said Broadway Bank.

It is argued that "the court erred in instructing the jury that if
during a series of years sufficiently long, and in business transac-
tions sufficiently numerous to make out a regular course of business
in the conduct of the bank, the cashier had been accustomed to
sign the checks of his bank payable to his own order, or to the order
of his creditors, then the defendant was entitled to a verdict."   The
instructions excepted to are in accord with the decision of this court
in Gale v. Chase National Bank, 104 Fed. 214, 43 C. C. A. 496, which
cannot be distinguished, on principle, from the case at bar.   In the
Gale Case a cashier's draft, given to discharge his individual debt,
was under consideration, and it was decided that where it appears
that the cashier had, on numerous previous occasions, drawn similar
drafts to pay similar debts, and such acts had continued for a period
sufficiently long to establish a settled course of business which had
been sanctioned and ratified by the officers of the bank, it might be
inferred by the jury that such acts were known, or should have been
known, to the directors of the bank and that the cashier's acts were
authorized.   This, in substance, was the proposition charged in the
present case and the jury were told that the burden was upon the

defendant to show that the drafts in question, which on their face were calculated to excite suspicion, were drawn in the ordinary business of the bank. The charge was as favorable to the plaintiff as the facts and the law warranted. The Gale Case was again considered by this court (108 Fed. 987, 46 C. C. A. 683), and subsequently by the Supreme Court (188 U. S. 557, 23 Sup. Ct. 372, 47 L. Ed. 594), but the law of the first decision, in so far as it relates to the questions now under consideration, has not been changed or modified. It is the law of this court to-day and we see no reason why it should not be followed. It seems to be conceded by the plaintiff that if the court adheres to its former decision it is conclusive of the principal question involved. In order to show a course of business at the Middlesex Bank which permitted the use of the cashier's checks in payment of his personal obligations, that such business was open and notorious and that the president of the bank had actual knowledge of what was being done, the defendant was permitted to prove a number of such checks previously drawn by Valentine, as cashier, to the order of a broker who represented Valentine in stock speculations. The defendant also proved that this broker, when the first cashier's draft was offered to him by Valentine, declined to receive it until assured that it was authorized; that he had a conversation with the president of the bank, informed him of the unusual character of the draft, asked if the cashier had authority to give such a draft and was informed by the president that he had. The objections of the plaintiff to this evidence, and to other evidence of similar import, are inconsistent with his theory that it was necessary to show knowledge in the directors, and the objections were properly overruled. If actual knowledge were necessary it is not perceived how it could be proved more conclusively, as to the president at least, than by showing that he knew of Valentine's acts, was informed that they were unusual and suspicious and, thereafter, declared them to be authorized and permitted them to continue. The cause was carefully tried and no error was committed of which the plaintiff has a right to complain.

The judgment is affirmed with costs.